UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
        v.                     )    No. S1-4:05CR707 SNL
                               )                 (FRB)
TERRELL REID,                  )
                               )
            Defendant.         )

**MEMORANDUM,**
**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to
the undersigned United States Magistrate Judge pursuant to 28
U.S.C. § 636(b). The defendant Terrell Reid filed several pretrial
motions. Testimony and evidence was adduced on the various motions
and transcripts of the various hearings have been filed with the
court. (See Docket Nos. 411 and 412). Findings of fact will be
made in addressing defendant's various motions based on the
testimony and evidence adduced at the hearings.

1.   Defendant Reid's Motion To Suppress Tape Recorded
     Telephone Conversations Between Defendant And
     Confidential Source (Docket No. 211)

Evidence was adduced on the above motion at a hearing on
October 23, 2006 (Docket No. 411, Pp. 3-27).

Findings of Fact

On June 22, 2005, a confidential informant acting
undercover in cooperation with agents of the Drug Enforcement
Agency (DEA) arranged to purchase a quantity of crack cocaine from
defendant Reid. In making arrangements for the purchase the

confidential informant placed telephone calls to defendant Reid. These telephone calls were tape recorded by a DEA agent with the knowledge and consent of the confidential informant.

Later on June 22, 2005, the confidential informant met with defendant Reid and purchased from him a quantity of crack cocaine. During the meeting the confidential informant was wearing on his person a device which allowed DEA agents to overhear and tape record conversations occurring during the meeting between defendant Reid and the confidential informant. These conversations were overheard and tape recorded with the knowledge and consent of the confidential informant.

On June 27, 2005, the same confidential informant acting undercover and in cooperation with DEA agents again contacted defendant Reid by telephone to arrange to purchase a quantity of crack cocaine from defendant Reid. The telephone conversations were tape recorded with the knowledge and consent of the confidential informant.

Later on June 27, 2005, the confidential informant met with defendant Reid and purchased from him a quantity of crack cocaine. During the meeting the confidential informant again was wearing on his person a device which allowed DEA agents to overhear and record conversations occurring during the meeting between defendant Reid and the confidential informant. These conversations were overheard and tape recorded with the knowledge and consent of the confidential informant.

## Discussion

As grounds to suppress the tape recordings made on June 22 and 27, 2005, the defendant first contends that the recordings were made without the consent of either party to the conversations. The evidence adduced at the hearing does not support this assertion. Because the recordings were made with the knowledge and consent of the confidential informant, one of the parties to the conversations, the recordings were lawfully made and should not be suppressed. See United States v. White, 401 U.S. 745 (1971); United States v. Corona-Chavez, 328 F.3d 974, 978-79 (8th Cir. 2003); 18 U.S.C. 2511 2(c) and (d).

As further grounds to suppress the tape recordings the defendant asserts that the government, acting through the confidential informant, elicited incriminating statements from him in violation of his Fifth Amendment right not to be compelled to incriminate himself. Statements made by an unsuspecting subject to a person acting undercover on behalf of law enforcement officials are not obtained in violation of the suspect's Fifth Amendment right to be free from self-incrimination. Illinois v. Perkins, 496 U.S. 292 (1990); United States v. Ingle, 157 F.3d 1147, 1150 (8th Cir. 1998); United States v. Holmes, 44 F.3d 1150, 1159 (2nd Cir. 1995).

## Conclusion

For all of the foregoing reasons the defendant Reid's Motion To Suppress Tape Recorded Telephone Conversations Between Defendant And Confidential Source should be denied.

2.  <u>Defendant   Reid's Motion For Disclosure Of The</u>
<u>Confidential Informant</u> (Docket No. 210)

Evidence was adduced on the above motion at a hearing on
October 23, 2006 (Docket No. 411, Pp. 3-27).

<u>Findings of Fact</u>

On June 22 and 27, 2005, a confidential informant acting
in cooperation with agents of the Drug Enforcement Administration
met with and purchased crack cocaine from defendant Reid.

<u>Discussion</u>

Defendant Reid seeks pretrial disclosure of the identity
of the confidential informant participating in the transactions on
June 22 and 27, 2005.  In some circumstances the government can be
required to disclose prior to trial the identity of an informant
who participated in or was a firsthand witness to the criminal acts
alleged to have been committed by the defendant.  <u>Roviaro v. United</u>
<u>States</u>, 353 U.S. 53 (1957); <u>DeVose v. Norris</u>, 53 F.3d 201, 206-07
(8th Cir. 1995).  The government has informed the court that the
confidential informant who participated in the transactions with
the defendant on June 22 and 27, 2005, will be called as a witness
by the government at the trial of the case.  In such circumstances
pretrial disclosure of the informant's identity is not required.
<u>United States v. Foster</u>, 815 F.2d 1200, 1202-03 (8th Cir. 1987);
<u>United States v. Perkins</u>, 994 F.2d 1184, 1190 (6th Cir. 1993).

<u>Conclusion</u>

For all of the foregoing reasons the defendant Reid's
Motion For Disclosure Of The Confidential Informant should be
denied.

3.  Defendant Reid's Motion To Suppress Evidence And Statements (Docket No. 209)

Testimony and evidence was adduced on the above motion at a hearing on October 23, 2006 (Docket No. 411, Pp. 27-74).

## Findings of Fact

On August 31, 2005, Special Agent Joseph Cronin of the Drug Enforcement Administration (DEA) was monitoring conversations being intercepted and overheard pursuant to a court authorized wiretap on telephone number 314-568-9773. The telephone number was subscribed to by Lafranz Wilson and was known by investigating officers to be used also by defendant Terrell Reid.

Shortly after 5:00 p.m. on that date Agent Cronin overheard conversations between Terrell Reid and other persons which aroused his concern. Agent Cronin recognized Reid's voice as a result of Agent Cronin's involvement in an ongoing investigation of defendant Reid and others. Agent Cronin heard Reid describing an incident wherein someone had tried to shoot Reid at a park. From a series of conversations that Reid was having with various persons, Agent Cronin believed that the person who had tried to shoot Reid was then in the Wellston, Missouri, area driving a white pickup truck and that Reid was attempting to locate the person and intended to shoot him. Agent Cronin also learned from overhearing the conversations that Reid and several associates were driving in a four door sedan type vehicle. Upon hearing these conversations Agent Cronin alerted other officers in the field as to what was occurring.

One of the officers notified by Agent Cronin was Officer David Ryan, a St. Louis County, Missouri, Police Department who was then assigned to and working with a DEA Task Force investigating Reid and others. After being informed by Agent Cronin, Officer Ryan took up a position in the Wellston area in an effort to locate any of the individuals involved. Officer Ryan was driving alone in an unmarked police car. He was wearing a "raid" vest with the word "Police" on it and was carrying a weapon in a holster. He had with him pictures of Terrell Reid which had been obtained during the ongoing investigation. As he was parked on a thoroughfare in the Wellston area Officer Ryan saw a blue Lincoln Town Car occupied by several individuals pass by. He recognized one of the persons in the car as Terrell Reid. Officer Ryan then began following the Lincoln Town Car. As he did so he was notified by Agent Cronin that according to conversations overheard by Agent Cronin the persons in the Lincoln were headed to a BP gasoline station in Wellston where the white pickup truck and the person sought by Reid was then located.

The Lincoln soon arrived at the BP Station and pulled onto the lot and Officer Ryan followed. Officer Ryan then saw several men step out of the Lincoln, one of whom was Reid, who got out of the rear passenger area. Reid was carrying a gun in his hand. Officer Ryan saw the white pickup truck parked nearby. Officer Ryan then got out of his vehicle and yelled "Police." The men then got back in the Lincoln and drove away. Officer Ryan attempted to follow but lost sight of the car.

Officer Ryan continued to drive in the area in an effort to locate the Lincoln and its occupants.  About five or six minutes later the car was found parked near Wellston high school.  Officer Ryan searched in the area and found Terrell Reid standing in a stairwell next to the high school building   He was holding a cellular telephone in his hand, which he dropped.  Officer Ryan then placed Reid under arrest for conspiracy to commit murder.  Reid was handcuffed and removed from the stairwell.  The phone which he had dropped was seized.  In order to verify that the telephone which Reid had dropped was the one which Agent Cronin had been monitoring, Agent Cronin dialed the targeted number, 314-568-9773, and the incoming call sound activated on the seized telephone.

Officer Ryan continued a search of the area and he found a handgun lying next to a barrel located next to the stairwell where Reid had been found.  The gun, which appeared similar to the one Officer Ryan had seen in Reid's possession at the BP Station, was seized by Officer Ryan.

On the following morning Officer Ryan went to the St. Louis County Jail in an effort to interview Reid.  Officer Ryan advised Reid of his constitutional rights.  Reid told Officer Ryan he didn't wish to make any statement and the interview was then terminated.

## Discussion

As grounds to suppress the items seized from him the defendant asserts that he was arrested without probable cause and that the items seized were a product of his unlawful arrest.

The arrest of the defendant Terrell Reid was lawful although made without a warrant, because made upon probable cause. United States v. Watson, 423 U.S. 411 (1976); Gerstein v. Pugh, 420 U.S. 103 (1975). Probable cause for an arrest exists when an officer making an arrest has facts and circumstances within his knowledge sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense. Beck v. Ohio, 379 U.S. 89, 91 (1964). Probable cause is a "fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). "[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." Spinelli v. United States, 393 U.S. 410, 419 (1969). Based on their law enforcement training and experience police officers may draw reasonable inferences of criminal activity from circumstances which might seem merely innocuous to others not so trained and experienced. United States v. Wajda, 810 F.2d 754, 758 (8th Cir. 1987). In determining whether probable cause for a warrantless arrest existed in a particular case the court must consider the totality of the circumstances, including all of the information collectively known

to the officers involved in the investigation.  <u>United States v.</u>
<u>Bubis</u>, 744 F.2d 61, 64 (8th Cir. 1984).

In this case Agent Cronin overheard Reid and others
engaged in conversation indicating that they were attempting to
locate and shoot an individual.  From the conversations Agent
Cronin was able to determine that the intended victim was in the
Wellston, Missouri, area driving a white pickup truck.  Eventually
he learned from listening to the conversations that the victim and
truck had been determined by Reid and others to be located at a BP
gas station in Wellston and that Reid and others were on their way
to that location.  Agent Cronin passed this information on to other
officers in the field, including Officer Ryan.  Officer Ryan was
able to locate and follow Reid and the others as they drove to and
eventually stopped at the BP gas station.  Officer Ryan saw a white
pickup truck on the station lot and saw Reid and others get out of
their car, with Reid holding a gun in his hand.  When Officer Ryan
got out of his car wearing his police jacket and yelled "Police",
Reid and the others jumped back in their car and fled.  A law
enforcement officer knowing all of these facts and circumstances
would be warranted in believing that Reid had committed and was
committing an offense.  <u>See</u>  R.S.Mo. § 564.016 (Conspiracy),
565.020 (Murder).  Officer Ryan therefore had probable cause to
arrest defendant Reid and his arrest was lawful.

The seizure of the telephone which Reid was holding, and
dropped, was seized incident to the lawful arrest of Reid and its

seizure was therefore lawful.  New York v. Belton, 453 U.S. 454 (1981); United States v. Robinson, 414 U.S. 218 (1973).

The handgun seized by Officer Ryan was not in the possession of the defendant at the time it was found and seized. It was located on the ground next to a barrel close to the area where defendant Reid was arrested.  This was an open and public area and the gun was on the ground in plain view.  Further, the gun appeared to be similar to the one Officer Ryan had seen Reid carrying on the BP station lot.  The seizure of the gun was therefore lawful.  Horton v. California, 496 U.S. 128 (1990); Texas v. Brown, 460 U.S. 730 (1983); Minnesota v. Dickerson, 508 U.S. 366 (1993).

The defendant in his motion also seeks to suppress any statements made by him as the fruit of his unlawful arrest. However, the evidence adduced at the hearing did not show the defendant to have made any statements to law enforcement officials following his arrest, and in fact showed that he affirmatively declined to do so.

## Conclusion

To the extent that the defendant's motion seeks to suppress the items of physical evidence seized on August 31, 2005, it should be denied.  To the extent that the defendant's motion seeks to suppress any statements made by him following his arrest on August 31, 2005, it should be denied as moot.

4. Defendant Reid's Motion To Suppress Interception Of Electronic Communication (Docket No. 308)

Evidence was adduced on the above motion at a hearing on October 24, 2006 (Docket No. 412).

## Findings of Fact

The government contends that conversations in which the defendant Reid was a participant were intercepted on three separate telephones being monitored by court authorized wiretaps. Those telephone numbers were 314-392-1243, 314-568-9773 and 314-599-1291.

On June 9, 2005, Assistant United States Attorney James C. Delworth appeared before United States District Judge Stephen N. Limbaugh and made an application for interception of wire communications over telephone numbers 314-392-1243, 314-568-9773 and a third number not at issue in this motion. (See Government's Motion Hearing Exhibit Volume 2, Tab 24). The application referenced and was accompanied by an affidavit of Drug Enforcement Administration Task Force Officer Kathleen Nocito which was subscribed and sworn before Judge Limbaugh on that same date. (See Government's Motion Hearing Exhibit Volume 2, Tab 25). Officer Nocito's affidavit established that she and other law enforcement officials were investigating Lafranz Wilson and other named persons, and others yet unknown for conspiracy and distribution of cocaine and marijuana, money laundering and other offenses. The affidavit indicated that the communications of the named individuals as well as others were expected to be intercepted on the described telephones. The communications expected and sought to be intercepted concerned the specifics of the offenses being

investigated, including the nature, extent and methods of operation of the subjects; the identities and roles of accomplices and co-conspirators; information concerning the transfer of contraband and monies; the location of records relating to the activities of the subjects and other information.

The affidavit set out information gained during the investigation which showed that Lafranz Wilson was using the subject telephones to conduct narcotics trafficking and related activities. The information set out in the affidavit was derived mainly from conversations overheard as a result of previous court authorized wire interceptions. A series of those overheard conversations were described in the affidavit which demonstrated that Lafranz Wilson and others were using the subject telephones to carry on their unlawful activities. (See Government's Motion Hearing Exhibit Volume 2, Tab 25, Pp 19-39). The affidavit also described that court authorized pen register surveillance had been conducted on the subject telephones and that information gathered through the use of the pen registers, described in detail in the affidavit, showed extensive contacts between the subjects using the described telephones. (See Government's Motion Hearing Exhibit Volume 2, Tab 25, Pp 46-59).

Lastly, the affidavit explained why the wire interceptions were needed and the reasons why alternative investigative techniques had not been, or were not likely to be successful in determining the scope of the activities of the subjects and their methods of operation, or in identifying sources

of drugs and other co-conspirators, or were too dangerous to undertake. (See Government's Motion Hearing Exhibit Volume 2, Tab 25, Pp. 64-89).

On June 9, 2005, Judge Limbaugh signed the order authorizing the interception of wire communications over the subject telephones. The order stated that the Court had found probable cause to believe that the listed individuals were committing violations of Title 21, United States Code, Sections 841(a)(1), 843, 846 and 848, and violations of other laws of the United States; that the subject telephones were being used in connection with the commission of those offenses; and that communications concerning the offenses were likely to be intercepted on the subject telephones. The order also found that normal investigative techniques had been tried and failed, reasonably appeared to be unlikely to succeed if tried, or were too dangerous to employ. The order authorized the interception of communications over the subject telephones for thirty (30) days. (See Government's Motion Hearing Exhibit Volume 2, Tab 26).

On July 8, 2005, Assistant United States Attorney James C. Delworth appeared before United States District Judge Stephen N. Limbaugh and made application for the continued interception of wire communications over the subject telephones for an additional thirty (30) days. (See Government's Motion Hearing Exhibit Volume 2, Tab 31). The application again referenced and was accompanied by an affidavit of Drug Enforcement Administration Task Force Officer Kathleen Nocito which was subscribed and sworn before Judge

Limbaugh on that same date. (See Government's Motion Hearing Exhibit Volume 2, Tab 32). Officer Nocito's affidavit recited much of the same information set out in her original affidavit filed on June 9, 2005. It also noted that interceptions made pursuant to monitoring of the subject telephones done pursuant to Judge Limbaugh's order of June 9, 2005, had identified additional subjects who were involved in the described unlawful activities and additional subjects whose conversations were anticipated to be intercepted. The affidavit also noted that the interceptions had revealed greater involvement by Lafranz Wilson in the activity than originally shown. The affidavit set out reasons why it was necessary to continue the monitoring of the subject telephones to further identify persons involved and the scope of their activities. (See Government's Motion Hearing Exhibit Volume 2, Tab 32, Pp. 14-16). The affidavit further set out a series of conversations overheard as a result of the order of June 9, 2005, which showed the subjects were continuing to use the subject telephones to carry on their unlawful activities. (See Government's Motion Hearing Exhibit Volume 2, Tab 32, Pp. 16-28).

Lastly, the affidavit again explained why the wire interceptions were needed and the reasons why alternative investigative techniques had not been, or were not likely to be successful in determining the scope of the activities of the subjects and their methods of operation, or in identifying sources of drugs and other co-conspirators, or were too dangerous to

undertake.  (<u>See</u> Government's Motion Hearing Exhibit Volume 2, Tab 32, Pp. 40-63).

On July 8, 2005, Judge Limbaugh signed the order authorizing the interception of wire communications over the subject telephones.  The order stated that the Court had found probable cause to believe that the listed individuals were committing violations of Title 21, United States Code, Sections 841(a)(1), 843, 846 and 848, and violations of other laws of the United States; that the subject telephones were being used in connection with the commission of those offenses; and that communications concerning the offenses were likely to be intercepted on the subject telephones.  The order also found that normal investigative techniques had been tried and failed, reasonably appeared to be unlikely to succeed if tried, or were too dangerous to employ.  The order authorized the interception of communications over the subject telephones for thirty (30) days. (<u>See</u> Government's Motion Hearing Exhibit Volume 2, Tab 33).

On August 5, 2005, Assistant United States Attorney James C. Delworth appeared before United States District Judge Stephen N. Limbaugh and made application for the continued interception of wire communications over the subject telephones for an additional thirty (30) days.  (<u>See</u> Government's Motion Hearing Exhibit Volume 3, Tab 37).  The application again referenced and was accompanied by an affidavit of Drug Enforcement Administration Task Force Officer Kathleen Nocito which was subscribed and sworn before Judge Limbaugh on that same date.  (<u>See</u> Government's Motion Hearing

Exhibit Volume 3, Tab 38). Officer Nocito's affidavit recited much of the same information set out in her two previous affidavits filed on June 9 and July 8, 2005. It also noted that interceptions made pursuant to monitoring of the subject telephones done pursuant to Judge Limbaugh's order of July 8, 2005, had identified additional subjects who were involved in the described unlawful activities and additional subjects whose conversations were anticipated to be intercepted. The affidavit set out reasons why it was necessary to continue the monitoring of the subject telephones to further identify persons involved and the scope of their activities. (See Government's Motion Hearing Exhibit Volume 3, Tab 38, Pp. 13-17). The affidavit further set out a series of conversations overheard as a result of the order of July 8, 2005, which showed the subjects were continuing to use the subject telephones to carry on their unlawful activities. (See Government's Motion Hearing Exhibit Volume 3, Tab 38, Pp. 19-28).

Lastly, the affidavit once again explained why the wire interceptions were needed and the reasons why alternative investigative techniques had not been, or were not likely to be successful in determining the scope of the activities of the subjects and their methods of operation, or in identifying sources of drugs and other co-conspirators, or were too dangerous to undertake. (See Government's Motion Hearing Exhibit Volume 3, Tab 38, Pp. 35-61).

On August 5, 2005, Judge Limbaugh signed the order authorizing the interception of wire communications over the

subject telephones.  The order stated that the Court had found probable cause to believe that the listed individuals were committing violations of Title 21, United States Code, Sections 841(a)(1), 843, 846 and 848, and violations of other laws of the United States; that the subject telephones were being used in connection with the commission of those offenses; and that communications concerning the offenses were likely to be intercepted on the subject telephones.  The order also found that normal investigative techniques had been tried and failed, reasonably appeared to be unlikely to succeed if tried, or were too dangerous to employ.  The order authorized the interception of communications over the subject telephones for thirty (30) days. (<u>See</u> Government's Motion Hearing Exhibit Volume 3, Tab 39).

     The wire interceptions conducted pursuant to these orders ceased on September 3, 2005.  (<u>See</u> Government's Motion Hearing Exhibit 3, Tab 43).  The recordings of the intercepted conversations were submitted to the court and ordered sealed.  The notification requirements of 18 U.S.C. §2518(d) were suspended until further order of the court.  (<u>See</u> Government's Motion Hearing Exhibit Volume 3, Tabs 43 and 44).

     On September 26, 2005, Assistant United States Attorney James C. Delworth appeared before United States District Judge Stephen N. Limbaugh and made an application for interception of wire communications over telephone numbers 314-392-1243 and 314-599-1291.  (<u>See</u> Government's Motion Hearing Exhibit Volume 4, Tab 69).  The application referenced and was accompanied by an

affidavit of Drug Enforcement Administration Agent James Stroop
which was subscribed and sworn before Judge Limbaugh on that same
date. (See Government's Motion Hearing Exhibit Volume 4, Tab 70).
Agent Stroop's affidavit established that he and other law
enforcement officials were investigating Lafranz Wilson and other
named persons, and others yet unknown for conspiracy and
distribution of cocaine, heroin, ecstacy and marijuana, money
laundering and other offenses.  The affidavit indicated that the
communications of the named individuals as well as others were
expected to be intercepted on the described telephones.  The
communications expected and sought to be intercepted concerned the
specifics of the offenses being investigated, including the nature,
extent and methods of operation of the subjects; the identities and
roles of accomplices and co-conspirators; information concerning
the transfer of contraband and monies; the location of records
relating to the activities of the subjects and other information.

        The affidavit set out information gained during the
investigation which showed that Lafranz Wilson was using the
subject telephones to conduct narcotics trafficking and related
activities.  The information set out in the affidavit was derived
mainly from conversations overheard as a result of previous court
authorized wire interceptions.  A series of those overheard
conversations were described in the affidavit which demonstrated
that Lafranz Wilson and others were using the subject telephones to
carry on their unlawful activities.  (See Government's Motion
Hearing Exhibit Volume 2, Tab 70, Pp 18-31).  The affidavit also

described that court authorized pen register surveillance had been conducted on the subject telephones and that information gathered through the use of the pen registers, described in detail in the affidavit, showed extensive contacts between the subjects using the described telephones. (See Government's Motion Hearing Exhibit Volume 4, Tab 70, Pp 31-36).

Lastly, the affidavit explained why the wire interceptions were needed and the reasons why alternative investigative techniques had not been, or were not likely to be successful in determining the scope of the activities of the subjects and their methods of operation, or in identifying sources of drugs and other co-conspirators, or were too dangerous to undertake. (See Government's Motion Hearing Exhibit Volume 4, Tab 70, Pp. 36-57).

On September 26, 2005, Judge Limbaugh signed the order authorizing the interception of wire communications over the subject telephones. The order stated that the Court had found probable cause to believe that the listed individuals were committing violations of Title 21, United States Code, Sections 841(a)(1), 843, 846 and 848, and violations of other laws of the United States; that the subject telephones were being used in connection with the commission of those offenses; and that communications concerning the offenses were likely to be intercepted on the subject telephones. The order also found that normal investigative techniques had been tried and failed, reasonably appeared to be unlikely to succeed if tried, or were too

dangerous to employ. The order authorized the interception of communications over the subject telephones for thirty (30) days. (See Government's Motion Hearing Exhibit Volume 4, Tab 71).

The wire interceptions conducted pursuant to this order ceased on October 25, 2006. (See Government's Motion Hearing Exhibit Volume 4, Tab 75). The recordings of the intercepted conversations were submitted to the court and ordered sealed. The notification requirements of 18 U.S.C. § 2518(d) were suspended until further order of the court. (See Government's Motion Hearing Exhibit Volume 4, Tabs 75 and 76).

Each of the orders authorizing the interception of wire communications discussed above required that the monitoring of conversations be conducted in such a way as to minimize the interception and disclosure of the communications intercepted to those communications relevant to the pending investigation. To that end, on June 9, 2005, Assistant United States Attorney James C. Delworth wrote a 12 page letter to Officer Nocito advising of the obligation of the duties of the agents conducting the monitoring, including the minimization requirement. (See Government's Motion Hearing Exhibit Volume 2, Tab 27. Additionally Assistant United States Attorney Delworth met with the monitoring agents to explain the contents of the letter and to answer any questions they might have. Each monitoring agent was required to sign an acknowledgment that they had read the letter and understood the requirements set out therein.

Each of the orders authorizing interception of wire communications discussed above required that an Assistant United States Attorney familiar with the facts of the case to report to the court on or about the tenth, twentieth and thirtieth days of interception regarding the progress made toward achievement of the objectives and the need for continued interception. These required reports were prepared and timely filed in each instance. (See Government's Motion Hearing Exhibit Volume 2, Tabs 28, 29, 30 and 34; Volume 3, Tabs 35, 36, 40, 41 and 42; Volume 4, Tabs 72, 73 and 74).

## Discussion

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, codified at 18 U.S.C. §2510, et. seq., provides for the interception of wire, oral, and electronic communications under certain circumstances. Under the statute, an order for electronic surveillance may be entered by a United States District Judge upon the application of a federal law enforcement officer who has been authorized to make such application by the United States Attorney General or his authorized designee. An authorization for such application is presumed to be valid unless the person challenging the application makes a prima facie showing that it was not so authorized. See United States v. O'Connell, 841 F.2d 1408, 1416 (8th Cir.), cert. denied, 487 U.S. 1210 (1988). The application must include a full and complete description of the facts relied upon, including details of the alleged offense, description of the facilities where the communications are to be intercepted,

description of the communications sought to be intercepted, the identity of the persons known whose communications will be intercepted, whether other investigative procedures have been tried, and the period of time for which the interception is requested. The application must also indicate whether previous applications involving the same facilities, persons, or places have been made. 18 U.S.C. §2518(1). The applications here contain all of the statutory required elements. The applications were made by an Assistant United States Attorney; they contained an authorization from an Assistant Attorney General designated to make such authorization; and they included the identifying items required regarding the person, places, and communications sought to be intercepted. The applications also indicated that communications would be intercepted for no more than thirty (30) days. There was no error in the form of the application.

Under 18 U.S.C. §2518(3), the court may issue the order only if it finds probable cause to believe that 1) a person is committing one of the crimes enumerated in 18 U.S.C. § 2516, 2) communications concerning such an offense will be obtained through interception, and 3) the place where the communications are to be intercepted is being used in connection with the commission of such an offense. The court must also find that normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried, or they appear to be too dangerous. In order to find that normal investigative techniques are inadequate, the court need not find that the government has

exhausted every conceivable normal investigative technique. <u>See</u>
<u>United States v. Macklin</u>, 902 F.2d 1320, 1326-27 (8th Cir.), <u>cert.</u>
<u>denied</u>, 498 U.S. 1031 (1991); <u>United States v. Smith</u>, 909 F.2d
1164, 1166 (8th Cir.); <u>cert. denied</u>, 498 U.S. 1032 (1991).

Here the affidavits submitted in support of the wiretaps
provided an ample basis for Judge Limbaugh's finding of probable
cause to issue the wiretap orders. The affidavits provided
detailed information demonstrating that the described crimes were
being committed by the named subjects; that the subject telephones
were being used for the commission of those crimes; and that the
wiretaps were likely to result in the interception of
communications involving the criminal activity. Thus, there was
ample basis for the probable cause finding.

Additionally, the affidavits presented showed that normal
investigative techniques were not sufficient. Although the normal
techniques had resulted in law enforcement gaining some
information, the affidavits demonstrate that those techniques were
not sufficient to accomplish the objectives of the investigation.
The affidavits set out detailed information as to how various
normal techniques had been thwarted or failed, and why others would
not work or were too dangerous to undertake.

Under 18 U.S.C. §2518(4), the order must specify the
identity of the persons known whose communications are to be
intercepted, the nature and location of the communications
facilities where the intercept is granted, the type of
communications to be intercepted, the identity of the agency and of

the person performing interception and the period of time during which the interception is authorized. The period of time may not be longer than thirty (30) days. 18 U.S.C. §2518(5). The orders here fully complied with the above requirements.

Additionally, Title III includes certain post-authorization duties, including objectively reasonable efforts to minimize any unauthorized interceptions. 18 U.S.C. §2518(5); <u>See United States v. Smith</u>, 909 F.2d at 1167. Here, the Assistant United States Attorney provided the agents with detailed directions both orally and in writing as to proper minimization procedures. Each monitoring agent had to read these procedures and sign a statement stating that he read and understood the minimization procedures. There is no evidence before the court which would show that the minimization requirements were not met.

Further, the application for a Title III order must be sealed and all recordings made pursuant to it must be provided to the court and sealed immediately. This procedure was followed in this case.

The wiretaps authorized here were based on probable cause, and met all the requisite statutory elements. The evidence adduced on the motion shows no grounds to suppress any of the evidence seized from the wiretaps.

<u>Conclusion</u>

For all of the foregoing reasons, the defendant's Motion To Suppress Interception Of Electronic Communication should be denied.

Although represented by counsel, the defendant on April 26, 2007, filed two motions pro se.

5.    Defendant Reid's Pro Se Motion To Dismiss Indictment
      Unnecessary Delay While Motion Was Pending
      (Docket No. 501)

The defendant claims that the indictment should be dismissed because of the length of time his pretrial motions have been under advisement by the court.

The undersigned notes in the first instance that after a hearing on February 3, 2006, the trial court previously found in this case that on account of the complexity of the case and the volume of discovery to be conducted that the time limits imposed by the Speedy Trial Act, 18 U.S.C. §3161 et. seq. should not apply in this cause and the case was then set for trial on October 16, 2006. Thereafter a schedule was entered for the filing and hearing of pretrial motions.

On August 31, 2006, defendant Reid's then attorney requested a continuance of the trial date, noting the great volume of discovery and the continued need to review such discovery material, and further noting the court's previous order that because of the volume of discovery and complexity of the case the time limits of the Speedy Trial Act did not apply. The motion was granted and the case was reset for trial on November 27, 2006.

Defendant Reid's various pretrial motions were heard before the undersigned on October 23 and 24, 2006. Following the hearing a transcript of the proceedings was ordered by defendant's counsel.

On November 3, 2006, defendant Reid's attorneys filed a motion to withdraw (under seal) which was granted by the trial court on that same date and substitute counsel was appointed. On November 16, 2006, new counsel moved for a continuance of the trial date of November 27, 2006. The motion was granted and trial was continued until February 20, 2007.

The undersigned met with new counsel who requested additional time to review discovery, to review the transcripts of the motion hearing transcripts once filed, and to determine whether to file additional or supplemental motions and whether to ask to supplement the evidence presented at the motions. The request was granted and counsel was instructed to inform the court once those determinations had been made.

On January 31, 2006, the trial was continued to March 19, 2006. On March 6, 2006, defendant's counsel again requested a continuance of the trial noting that he and the defendant needed additional time to review the discovery materials in the case. The motion was granted and the trial was continued to May 29, 2007.

On approximately April 30, 2007, counsel for the defendant informed the court that he did not wish to file any additional motions or to supplement the evidence previously adduced on motions.

The defendant's pretrial motions had been heard and were under submission to the court for a period of 10 days when defendant's then counsel was granted leave to withdraw and new counsel was appointed. New counsel asked for and was granted

additional time to determine whether and what additional motions to file and whether to offer additional evidence on the motions then pending. Such time is excludable from computation of the speedy trial time period. <u>United States v. Mobile Materials, Inc.</u>, 871 F.2d 902, 913 (10th Cir. 1989); <u>United States v. Mejia</u>, 82 F.3d 1032, 1035-36 (11th Cir. 1996).

Counsel for the defendant notified the court on or about April 30, 2007, that he did not wish to file additional motions or to supplement the record.

Therefore, there has been no unnecessary delay in the consideration of defendant's pretrial motions and the defendant's motion should be denied.

6. <u>Defendant Reid's Pro Se Motion To Dismiss Indictment For Insufficient Evidence</u> (Docket No. 502)

A motion to dismiss is not a proper method by which to test the sufficiency of the government's evidence. <u>Costello v. United States</u>, 350 U.S. 359 (1956); <u>United States v. Gallagher</u>, 602 F.2d 1139, (3rd Cir. 1979) <u>cert.</u> <u>denied</u>, 444 U.S. 1040 (1980); <u>United States v. Knox</u>, 776 F.Supp. 174, 178 (M.D.Pa. 1991).

Therefore, the defendant's motion should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant Reid's Motion To Suppress Tape Recorded Telephone Conversations Between Defendant And Confidential Source (Docket No. 211) be denied.

**IT IS FURTHER RECOMMENDED** that the Defendant Reid's Motion For Disclosure Of The Confidential Informant (Docket No. 210) be denied.

**IT IS FURTHER RECOMMENDED** that Defendant Reid's Motion To Suppress Evidence And Statements (Docket No. 209) be denied in part and denied in part as moot.

**IT IS FURTHER RECOMMENDED** that Defendant Reid's Motion To Suppress Interception Of Electronic Communication (Docket No. 308) be denied.

**IT IS FURTHER RECOMMENDED** that Defendant Reid's <u>Pro</u> <u>Se</u> Motion To Dismiss Indictment Unnecessary Delay While Motion Was Pending (Docket No. 501) be denied.

**IT IS FURTHER RECOMMENDED** that Defendant Reid's <u>Pro</u> <u>Se</u> Motion To Dismiss Indictment For Insufficient Evidence (Docket No. 502) be denied.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).



UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of May, 2007.

- 28 -